# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**David Novak,**                                                   **02-CV-935 (RHK/SRN)**

    **Plaintiff,**

**v.**                                                   **REPORT & RECOMMENDATION**

**Rob Mundt, T.C. Outlaw,**
**G.L. Hershberger, Dr. M.A. Gray,**
**Bill Wood, J. Mann, Alan Jorgenson,**
**L. Maiden, G. Kirkland, Joe Van Rooy,**
**Lt. S. Davenport, R.N. K. Alford,**
**C. Burns, K. Delano, Michael Isaacson,**
**P.A. L.K. Brandt, and E. Emmerich,**

    **Defendants.**

---

David Novak, *Pro Se*, on Behalf of Himself

Friedrich Siekert, Esq., on behalf of Defendants

---

SUSAN RICHARD NELSON,  United States Magistrate Judge

   Pending before this Court is Defendants' Motion to Dismiss or for Summary Judgment (Doc.

No. 95).   This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants'

Motion to Dismiss or for Summary Judgment be granted.

## I.  FACTS

   Plaintiff filed his Complaint on May 1, 2002, in Federal District Court for the District of

Minnesota and filed an Amended Complaint on July 19, 2002.  On September 2, 2004, Defendants

brought this motion.

As of the filing of the complaint, Plaintiff resided at the Federal Correctional Institution ("FCI") in Oxford, Wisconsin.  The events giving rise to his complaint occurred at FCI Waseca, Minnesota, where Plaintiff was previously incarcerated.  He currently resides at Behavioral Systems Southwest in Phoenix, Arizona.  This action is based on events that allegedly occurred between August 13, 2001 and July 3, 2002.

Of the seventeen Defendants, sixteen are or were staff at FCI Waseca. Their positions/titles during the applicable time period are as follows: Rob Mundt, Warden through April 6, 2002 when he became Regional Manager, North Central Regional Office ("NCRO"); T.C. Outlaw, Warden from April 7, 2002 to January 24, 2004; G.L. Hershberger, Regional Director, NCRO; Mark Gray, M.D., staff physician; Alan Jorgenson, Health Services Administrator, Public Health Service ("PHS"); Michael Isaacson, Unit Manager; Linda Brandt, PHS Physician Assistant– Certified; Gregg Kirkland, Counselor - D Dorm; Joe Van Rooy, Counselor - D Dorm; Lt. Scott Davenport, Lieutenant Officer; Kirk Alford, PHS Registered Nurse; Corey Burns, Senior Officer Specialist; Leilani Maiden, Medical Records Secretary (resigned from BOP on November 16, 2002); Eric Emmerich, Officer; William Wood, Associate Warden of Programs (retired April 2004); John Mann, Associate Warden of Operations (retired March 20, 2004); Kenneth Delano, Senior Officer Specialist.

Plaintiff alleges violations of his First, Fifth and Eighth Amendment rights while he was incarcerated at FCI Waseca.[1]   Specifically, Plaintiff contends that Defendants violated his rights as

---

[1]The Court notes that in his Amended Complaint, Plaintiff lists only one prior lawsuit in federal court, namely, a case pending in United States District Court for the District of Nevada, CV-S-01-0789.  This District's § 1983 complaint form requires a prisoner to indicate whether he or she has

follows:

1.     Various Defendants allegedly denied Plaintiff medical care in violation of the Eighth Amendment by taking his prescription sunglasses, refusing to provide a lower bunk, and denied him medical care for his vision, hernia, back pain, injuries sustained when beaten by another inmate, and alleged bleeding wrists from tight handcuffs;

2.     Various Defendants allegedly violated the Eighth Amendment's proscription against cruel and unusual punishment by placing Plaintiff in a freezing cold segregation cell with a one-inch pad; separate named Defendants conspired to have him beaten by another inmate; several Defendants applied handcuffs too tightly causing his wrists to bleed; several Defendants intentionally provided the incorrect dosage for dye for a CT scan;

3.     Various Defendants allegedly violated the Fifth Amendment right of access to the courts and due process by denying Plaintiff a telephone call to his attorney; refused to provide him with successive administrative review forms; retaliated against him for filing complaints; harassed Plaintiff for his actions in expressing his concerns to the Warden; and falsified incident reports, which resulted in

---

begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the prisoner's imprisonment in the last three years. (See Am. Complaint at 1, ¶ I.) Plaintiff failed to disclose two other suits, in addition to the instant suit, that he has filed in this District Court within the last three years, both of which involve his incarceration at FCI Waseca: Novak v. Isaacson, et al., 03-CV-5031 RHK/SRN, and Novak v. Outlaw, et al., 03-CV-3656 RHK/SRN. In both instances, this Court granted the defendants' motions to dismiss or for summary judgment.

Plaintiff's segregation and reduction of "good time;" and

4.     Various Defendants allegedly violated Plaintiff's First Amendment right to

freedom of religion, by precluding him from attending a Jewish religious service.

(See Am. Complaint.)    For these alleged violations, Plaintiff seeks actual, nominal and punitive

damages pursuant to Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388 (1971)

(individual entitled to sue federal agents for monetary damages when agents searched house without

probable cause or warrant, in violation of Fourth Amendment).

Defendants move for dismissal/summary judgment on the following grounds: (1) the Court lacks

subject matter jurisdiction, Fed. R. Civ. P. 12(h), because Plaintiff failed to exhaust his administrative

remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); Booth v.

Churner, 532 U.S. 731 (2001); (2) the Court lacks subject matter jurisdiction, Fed. R. Civ. P. 12(h),

and/or the complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6), because Defendants Alford, Jorgenson, and Brandt enjoy absolute immunity, and the

remaining Defendants enjoy qualified immunity; and (3) the complaint fails to state a claim against the

supervisory personnel-Defendants for want of personal involvement.  (Defs.' Mem. in Supp. Mot.

Dismiss/Summ. J. at 1-2.)

## II.    DISCUSSION

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the

complaint as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  All reasonable inferences

from the complaint must be drawn in favor of the nonmoving party.  Hafley v. Lohman, 90 F.3d 264,

266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).  Dismissal is appropriate only if "it appears

beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief."

Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "Although it is to be liberally construed, a *pro se*

complaint must contain specific facts supporting its conclusions."  Martin v. Sargent, 780 F.2d 1334,

1337 (8th Cir. 1985).

> Rule 12(b)(6) itself provides that when matters outside the pleadings
> are presented and not excluded by the court, the motion shall be
> treated as one for summary judgment and disposed of as provided in
> Rule 56.  Our court has interpreted the phrase "matters outside the
> pleadings" to include "any written or oral evidence in support of or in
> opposition to the pleading that provides some substantiation for and
> does not merely reiterate what is said in the pleadings."

Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999), cert.

denied, 528 U.S. 1117 (2000) (citation omitted).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

A non-moving party cannot rely on the "mere existence of *some* alleged factual dispute

between the parties [to] defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986).

"[R]egardless of whether the moving party accompanies its summary judgment motion with

affidavits, the motion may, and should, be granted so long as whatever is before the district court

demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is

satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party shows–"that

is, pointing out to the district court–that there is an absence of evidence to support the nonmoving

party's case," id. at 325, "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and

by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'" Id.  Thus, a non-moving party

cannot simply rely on assertions made in the pleadings to avoid summary judgment. E.g., Krein v.

DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).  If the non-moving party "fails to make a showing

sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial," then Rule 56(c) requires the entry of summary judgment against such party. Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); accord Reed v. Woodruff County, 7 F.3d 808, 810

(8th Cir. 1993).  All evidence will be viewed in the light most favorable to the nonmoving party, e.g.,

Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980), and *pro se*

pleadings are more liberally construed than those drafted by an attorney.  See Smith v. St. Bernards

Regional Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).

In their papers in support of and in opposition to Defendants' Motion to Dismiss or for

Summary Judgment, both parties submitted materials outside the pleadings which the Court intends to

consider.  Under Fed. R. Civ. P. 12(b)(6), these submissions convert Defendants' motion to dismiss

into a motion for summary judgment to be treated as provided under Fed. R. Civ. P. 56.

### A.    Dismissal for Lack of Subject Matter Jurisdiction - Failure to Exhaust

The PLRA requires a prisoner to exhaust all available administrative remedies prior to bringing

suit:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  The Supreme Court has affirmed that the congressional intent of the PLRA was to require that if there is an administrative remedy scheme, it must be exhausted prior to the filing of a complaint in federal court.  Booth v. Churner, 532 U.S. 731, 734, 740 (2001).  In Booth, an inmate filed a complaint under 42 U.S.C. § 1983, and failed to pursue his administrative grievance through the intermediate or final review steps.  Id. at 734-35.  The Supreme Court affirmed the District Court's dismissal of Booth's complaint without prejudice for failure to exhaust the available state remedies.  Id.

As noted in Booth, the Bureau of Prisons maintains a three-step administrative remedy program, codified at 28 C.F.R. §§ 542.10-542.16; see also, Dec. of Ann Kinyon, ¶ 6. [2]  This three-step process provides federal inmates an opportunity to voice their grievances and resolve issues informally with prison staff prior to seeking relief through the judicial system.  Id. at ¶ 5.  Under the procedure, after informal resolution fails, the inmate must present a complaint at the institution where the alleged violation took place.  28 C.F.R. § 542.13, Id. at ¶ 7.  If the response is not satisfactory, the inmate may then appeal the adverse decision to the regional director.  Id. at ¶ 8.  If that response is not satisfactory, the inmate may appeal to the Bureau of Prisons' central office.  Id. at ¶ 9.  Once the central office denies a remedy request, the inmate has exhausted the administrative remedies and may

---

[2] Again, the Court recognizes that by considering Defendants' attachment, and several other attachments referenced in this Report & Recommendation, it is viewing this as a motion for summary judgment.

proceed to federal court on that claim.  Id.

Plaintiff has not exhausted his administrative remedies.  (Kinyon Decl., ¶¶ 13-23 and Exs. B and E.)  Ann Kinyon, a Paralegal Specialist for the Consolidated Litigation Center for Minnesota, reviewed Plaintiff's administrative remedy history on the BOP's computerized Administrative Generalized Retrieval system.  This system logs all formal administrative remedy requests (forms BP-9, BP-10 and BP-11) made by an inmate and the action taken on those requests.  Ms. Kinyon attached Plaintiff's Administrative Remedy Generalized Retrieval documents as Attachment B to her declaration. Based on Ms. Kinyon's review of the computer data, Plaintiff has not completed the appeal process on any one issue asserted in the Complaint and Amended Complaint.  Id.  While at FCI-Waseca, Plaintiff filed approximately fifty administrative remedy requests, several of which were filed between August 13, 2001 and July 3, 2002 – the relevant time period at issue.  Although he has filed numerous remedy requests related to his incarceration, Plaintiff has not exhausted his administrative remedies on any one issue raised in the Amended Complaint.  Id.

In his Amended Complaint, Plaintiff admits that he did not exhaust his administrative remedies, but asserts that prison officials refused to provide him with successive administrative remedy forms, thus making the grievance procedure futile.  (Am. Complaint at 2, ¶ II A-D.)  Plaintiff therefore contends that he had no choice but to file his Complaint.  Id.

Defendants, however, offer evidence to rebut Plaintiff's assertions.  Staff attempted to informally resolve Plaintiff's complaints and provided him with the necessary forms to file grievances at all three levels of appeal – institutional, regional office and central office.  (Decl. of J. Mann, ¶¶ 6-10; Decl. of M. Isaacson, ¶ 6; Decl. of G. Kirkland, ¶ 6; Decl. of J. Van Rooy, ¶ 4.)  Moreover, Plaintiff

did not complain about denial of access to the remedy program.  Plaintiff could have lodged a complaint in one of two ways: (1) by appealing the denial of an Inmate Request to Staff; and (2) through the administrative remedy request program previously described.  Plaintiff did not submit any Inmate Requests to Staff seeking administrative remedy forms resulting in the denial of such forms. (Kinyon Decl., ¶ 27.)  In fact, a review of Plaintiff's Inmate Requests to Staff shows that staff responded to his requests. ( Id.; Mann Decl., ¶ 9.)

Additionally, Plaintiff did not submit an administrative remedy request claiming denial of access to the system.  (Kinyon Decl., ¶ 27.)  Moreover, as evidenced by his filing of more than fifty administrative remedy requests during his incarceration at FCI Waseca, it is clear that Plaintiff had full access to the administrative remedy program. While some of Plaintiff's filings were initially rejected for failure to comply with filing procedures, he was given the opportunity to correct any filing deficiencies. (Kinyon Decl., ¶¶ 13-23.)

The administrative remedy program regulations also allow Plaintiff to appeal the rejection of any administrative remedy and Plaintiff has not done so.  (Id., Mann Decl., ¶ 8.)  Finally, Plaintiff did exhaust his administrative remedies on claims arising out of disciplinary actions taken against him, but not on issues involved in this action.  Specifically, Plaintiff initiated four Discipline Hearing Officer ("DHO") appeals, one Unit Discipline Committee ("UDC") appeal, one complaint involving the DHO and one complaint regarding unprofessional conduct by staff.  (Kinyon Decl., ¶¶ 23-24.)   The fact that Plaintiff has attempted to exhaust his administrative remedies in these unrelated matters demonstrates that he knows how to use the administrative remedy process and Defendants have not prevented him from exercising his rights.

If there is no proof of full exhaustion, the complaint can be dismissed for failure to exhaust. Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000)(district court properly dismissed complaint when there were at least some unexhausted claims at time of filing); McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000); but see, Kozohorsky v. Harmon, 332 F.3d 1141, 1144 (8th Cir. 2003) (prisoner should have been permitted to file amended petition containing only exhausted claims, as he requested, rather than having entire action dismissed). Based on Plaintiff's conduct, the Court could recommend dismissal, however, the Court instead addresses Plaintiff's claims on the merits.

### B.   Absolute Immunity

Defendants argue that Defendants Alford and Brandt, both of whom are PHS employees, and Defendant Jorgenson, a commissioned PHS officer, enjoy absolute immunity from Plaintiff's claims. Defendant Alford is a PHS Registered Nurse, Defendant Jorgenson is a PHS Health Services Administrator and Defendant Brandt is a PHS Physician's Assistant.

Pursuant to 42 U.S.C. § 233(a), commissioned officers and employees of the PHS are immune from individual liability for Bivens or constitutional torts, provided that the claim is for damages for personal injuries resulting from the performance of medical, surgical, dental or related functions. See also, Carlson v. Green, 446 U.S. 14, 20 (1980).  Plaintiff's claims against these Defendants arise from the performance of medical-related functions.  As Defendants Alford, Jorgenson and Brandt are immune from liability by statute, the Court recommends that Plaintiff's claims be dismissed against them.

### C.   Qualified Immunity

The individual Defendants claim that they are entitled to qualified immunity from suit and that

dismissal should be granted.  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (citation omitted).   Rather than a mere defense to liability, qualified immunity is an immunity from suit.  <u>Id.</u>  When a plaintiff claims that an officer has violated a constitutional right, "the requisites of a qualified immunity defense must be considered in proper sequence."  <u>Id.</u>   Qualified immunity involves a two-step inquiry.  Viewed in the light most favorable to the party asserting injury, the threshold question is whether the alleged facts show that the officer's conduct violated a constitutional right.  <u>Id.</u> at 201.  If no constitutional right would have been violated were the allegations established, then qualified immunity is established.  If, however, the facts support a constitutional violation, the next sequential step is to ask whether the right was clearly established.  <u>Id.</u>  This inquiry is fact-specific:  "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>

Officials have qualified immunity if: (1) their actions do not violate clearly established statutory or constitutional law; (2) they did not know or have reason to know their actions would violate statutory or constitutional law; and (3) they reasonably believed their actions to be consistent with the rights that allegedly were violated.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 638-41 (1987).  Qualified immunity is available only in circumstances where reasonable public officials in the same situation would have followed the same course of action or where officers of reasonable competence could disagree on the appropriate course of action to follow.  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  Thus, the Court's determination as to qualified immunity requires an analysis of each of Plaintiff's claims.

**1.      Retaliation Claims**

Plaintiff alleges that Defendants acted in retaliation for his use of the administrative remedy process and for threatening to file this lawsuit against them. Specifically, he alleges that on or about May 10, 2002, Defendant Delano, having learned of Plaintiff's intent to file this lawsuit, had Defendant Emmerich place Plaintiff in handcuffs in a manner that caused his wrists to bleed. (Am. Complaint at 9-10, ¶ 27.) Plaintiff claims that his segregation cell confinement occurred as retaliation by Defendants Jorgenson and Maiden. (Am. Complaint at 14, ¶ 38.) Plaintiff asserts that on June 19, 2002, in retaliation for the Warden ordering them to allow Plaintiff to see the optometrist, Defendants Jorgenson and Maiden fabricated three additional Incident Reports against Plaintiff, resulting in Plaintiff being handcuffed and placed in a segregation cell. (Am. Complaint at 12, ¶ 34.) Further, Plaintiff alleges that on July 3, 2002, Defendant Jorgenson maliciously stated to Plaintiff that if Plaintiff pursued a lawsuit against the Medical Department and Jorgenson, that Jorgenson would make sure that Plaintiff was confined to the Special Housing Unit ("SHU") for his entire incarceration. (Am. Complaint at 23.)

Prison officials may not retaliate against an inmate for the exercise of a constitutional right. Sanders v. St. Louis County, 724 F.2d 665 (8th Cir. 1993); 42 U.S.C. § 1997(d). To prevail on a retaliation claim, however, a party must allege and prove that the conduct did not advance legitimate correctional goals or was not tailored narrowly enough to achieve such goals. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990); Dupont v. Saunders, 800 F.2d 8 (1st Cir. 1986); Franco v. Kelly, 854 F.2d 584 (2d Cir. 1988). The inmate must also prove that but for the unconstitutional, retaliatory motive, discipline would not have been imposed. See Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999).

Plaintiff has not made out such a claim. He has not alleged any material facts to support that

any of the alleged acts did not advance legitimate goals or were not narrowly tailored to achieve such

goals.  Factually, Defendants Delano, Emmerich, Jorgenson and Maiden all refute Plaintiff's claims and

state that their respective actions were taken in good faith as to their lawfulness and propriety and were

taken within the scope of their employment with the BOP.  (See Delano Decl., ¶¶ 6-7; Emmerich

Decl., ¶¶ 5-6; Jorgenson Decl., ¶¶ 6-7; Maiden Decl., ¶¶ 5, 6, and 8.)  Plaintiff's retaliation claims fail.

### 2.        Conspiracy Claims

Throughout his Amended Complaint, Plaintiff alleges that various Defendants conspired in their

actions against him.  Plaintiff alleges that a conspiracy existed which resulted in his segregation and led

to him being beaten.  He claims that Defendant Maiden had his prescription tinted glasses taken from

him and had him locked in a segregation cell to intentionally injure him.  (Am. Complaint at 8-9, ¶ 23.)

Plaintiff further alleges that on June 19, 2002, Defendants Jorgenson and Maiden conspired to falsify

three Incident Reports resulting in his confinement in a segregation cell.  (Am. Complaint at 12, ¶ 34.)

Plaintiff also contends that all named Defendants conspired to steal away his "good time" in an effort to

intimidate him into not filing a lawsuit.  (Am. Complaint at 15c, ¶ 45.)  Plaintiff alleges that all named

Defendants conspired inhumanely, cruelly and unusually to torture and inflict corporal punishment on

him, allowed him to remain in pain, and deliberately inflicted mental and physical abuse upon him.  (Am.

Complaint at 15, ¶ 42.)  Defendants deny these allegations.  (See, e.g., Maiden Decl., ¶¶ 5, 6, and 8;

Burns Decl., ¶ 6, and Jorgenson Decl., ¶¶ 6-7.)

The Amended Complaint fails to allege facts establishing the elements of conspiracy.  A civil

conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to

commit a lawful act by unlawful means; the principal elements of the offense are an agreement between

the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

Neff v. World Publishing Co., 349 F.2d 235, 257 (8th Cir. 1965).  A conspiracy claim must include

allegations of specific facts showing a "meeting of minds" among conspirators.  Snelling v. Westhoff,

972 F.2d 199, 200 (8th Cir. 1990), cert. denied, 506 U.S. 1053 (1993).  Plaintiff's claims fail to satisfy

the elements of a conspiracy claim, to say nothing of their failure as constitutional claims, and the Court

recommends their dismissal.

### 3.      Denial of Medical Care Claims

As to Plaintiff's medical claims, "[A] prison official violates the Eighth Amendment by being

deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a

substantial risk of serious *future* harm." Weaver v. Clarke, 45 F.3d 1253, 1255 (1995) (comparing

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (existing medical needs), with Helling v. McKinney,

509 U.S. 25, 35  (1993) (future harm to health)).  Under either an Estelle (existing medical needs) or

Helling (future harm to health) case, a prisoner must prove both the objective and subjective elements

of an Eighth Amendment violation.

The objective prong of an existing medical needs case requires the prisoner to prove that he or

she has a serious medical need, or, in other words, "the deprivation alleged must be, objectively,

'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle, 429 U.S. at 105;

Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995); Weaver, 45 F.3d at 1255 n.2.  "To constitute

an objectively serious medical need or a deprivation of that need," the Eighth Circuit has "repeatedly

emphasized that the need or the deprivation alleged must be either obvious to the layperson or

supported by medical evidence, like a physician's diagnosis." Aswegan, 49 F.3d at 464 (collecting

cases).

The subjective prong of both an existing medical needs and future harm case requires a prisoner to prove that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[3] <u>Farmer</u>, 511 U.S. at 837.  Thus, to violate the Eighth Amendment, "a prison official must have a 'sufficiently culpable state of mind.'" <u>Farmer</u>, 511 U.S. at 834.  Prison officials who are aware of an excessive risk to an inmate's health but acted reasonably cannot be liable for a Eight Amendment violation, even if the harm was not averted.  <u>Id.</u> at 844; <u>see also e.g.</u>, <u>Prater v. Dahm</u>, 89 F.3d 538, 541 (8th Cir. 1996).  Rather, "[a] prison official's duty under the Eighth Amendment is to ensure 'reasonable safety.'" <u>Farmer</u>, 511 U.S. at 844.  Plaintiff brings several medical-related Eighth Amendment claims including the denial of a request for a lower bunk, a hernia claim, prescription sunglasses claim and assault injuries claim.

### a.    Lower Bunk Claim

Plaintiff alleges that he requested a lower bunk because of back pain and a hernia, the latter allegedly caused by climbing down from a ladder-less upper bunk.  (Am. Complaint at 3, ¶¶ 2, 3.)  Plaintiff contends that Defendant Gray refused his lower bunk request. <u>Id.</u>  Dr. Gray denies that he refused Plaintiff a lower bunk, and, in fact, on January 17, 2002, Dr. Gray noted that Plaintiff had a low bunk permit and concurred with the permit.  ((Gray Decl., ¶ 10; Kinyon Decl. of 9/1/04, enclosing Medical Records ("MR") at 0000002.))  Dr. Gray instructed Plaintiff to perform no heavy lifting or

---

[3] In the context of future harm cases, the subjective prong should also "be determined in light of the prison authorities' current attitudes and conduct." <u>Helling</u>, 509 U.S. at 36.

recreation that bothered him.  (Gray Decl., ¶ 10.)  Aside from his allegations, Plaintiff fails to state any

material facts to support his claim.  Accordingly, his Eighth Amendment claim fails.

###### b.        Hernia Claim

Plaintiff alleges that on January 15 and 23, 2002, Defendant Gray refused medical treatment

related to his hernia.  (Am. Complaint at 3, ¶¶ 4-5.)  Dr. Gray maintains that he evaluated Plaintiff for a

hernia, examining him multiple times, without finding evidence of a hernia.  (Gray Decl., ¶ 8.)  Dr.

Gray's conclusion was confirmed by a consulting surgeon, who also noted no hernia, but ordered a CT

scan.  Id.  The CT scan showed no evidence of a hernia or other significant medical condition.  Id.

Plaintiff also alleges that in May 2002, he voluntarily agreed to return to the general population on

several conditions, including Defendant Isaacson's alleged assistance in procuring Plaintiff's hernia

surgery.  (Am. Complaint at 10, ¶ 28.)  Defendant Isaacson denies any such agreement.  (Isaacson

Decl., ¶ 8.)

Plaintiff has failed to allege any material facts that his hernia was an objectively "serious"

adverse medical condition.  Instead, Defendant Gray denies having refused medical treatment and

describes the various evaluations and tests performed relating to Plaintiff's abdominal pain.  Neither

Defendant Gray nor a consulting surgeon found any evidence of a hernia.  (Gray Decl., ¶  8.)

Defendant Gray opines that Plaintiff received appropriate and proper medical care.  Id.

Plaintiff has also failed to allege any facts to support a claim that BOP staff displayed deliberate

indifference to his medical needs.  Additionally, the medical records indicate that Plaintiff was seen and

evaluated for his complaints, there was no evidence of a hernia, and Plaintiff was treated accordingly.

(Gray Decl., ¶ 8, MR at 0000020.)  In sum, Plaintiff fails to state an Eighth Amendment claim based on

allegations related to a hernia.

### c.    Prescription Sunglasses Claim

Plaintiff asserts that Defendants Brandt, Gray, Isaacson, Jorgenson, Outlaw, Mann, Maiden, Kirkland, Mundt and Wood violated the Eighth Amendment by denying him his prescription sunglasses, which adversely affected his alleged medical condition of photophobia.  Plaintiff alleges that Defendant Isaacson agreed to assist Plaintiff in the return of his sunglasses, but they were not returned.  (Am. Complaint at 10, ¶ 28.)  In addition, Plaintiff alleges that on June 14, 2002, Defendant Brandt refused to provide vision health care and stated to Plaintiff, "Everyone else is allowed to wear prescription sunglasses, except you."  (Am. Complaint at 11, ¶ 30) (emphasis in original).  The Court notes that Plaintiff raised similar claims in Novak v. Outlaw, et al., 03-CV-3656 RHK/SRN, for which this Court entered judgment against Plaintiff.  To the extent that those claims are repeated here, collateral estoppel bars Plaintiff's relief in this case.

While Plaintiff claims that his prescription sunglasses are necessary for indoor use due to photophobia, Dr. Gray opines that photophobia is a subjective condition.  (Gray Decl., ¶ 4.)  BOP policy requires that when inmates are indoors, they are not allowed to wear sunglasses.  Id.  Defendant Gray and various other medical professionals examined Plaintiff regarding his complaints of photophobia.  (Gray Decl., ¶ 5.)  These clinical assessments have all determined that Plaintiff's eye condition does not require the indoor or outdoor use of prescription sunglasses.  Id.  Instead, Defendant Gray advised Plaintiff to wear non-prescription, clip-on sunglasses outside.  Id.

In addition to evaluations by BOP staff, Plaintiff's vision was evaluated by a contract optometrist, who found that Plaintiff needed corrective eyewear, but there was no clinical indication that

Plaintiff required prescription sunglasses to be worn indoors and outdoors.  (Gray Decl., ¶ 6.)  An

outside ophthalmologist also examined Plaintiff and concluded that prescription sunglasses were not

medically necessary.  Id.; MR at 0000030-31.  Based on all of these medical evaluations, Plaintiff was

not allowed to wear sunglasses indoors.  Id.

Plaintiff does not allege facts to the contrary.  As to the objective component, Plaintiff fails to

allege an objectively serious medical need or problem.  In fact, the evidence leads to the opposite

conclusion.  (See Gray Decl. ¶¶ 5-6; MR at 0000031.)  Even if Plaintiff had a medical need for

prescription sunglasses, it is not the type of condition for which a layperson would have easily

recognized that tinted prescription glasses were appropriate or medically necessary.  Plaintiff provides

no medical conclusions of a clinician, expert reports or medical records to support any claim that a lack

of sunglasses fell outside of the standard of care in the community, constituted deliberate indifference to

his medical needs, and/or caused him damages.

Under the subjective component, Plaintiff fails to demonstrate that Defendants acted with a

culpable state of mind.  FCI-Waseca staff, a contract optometrist and an outside ophthalmologist all

examined him and determined that sunglasses were not needed indoors.  He has not alleged facts to

suggest the existence of Defendants' culpable state of mind.  The claims against them should therefore

be dismissed.

### d.    Assault Injuries Claim

Plaintiff alleges that several Defendants refused his requests for proper care to address injuries

he sustained when he was beaten by another inmate who was placed in his segregation cell.  Plaintiff

alleges that after he was beaten on February 16, 2002, Defendant Alford refused to transport him to a

hospital and failed to perform an initial examination.  (Am. Complaint at 6, ¶¶ 15-16.)  Plaintiff also

contends that Defendants Davenport and Gray refused his requests to be taken to a hospital to be seen

by a doctor, get x-rays and receive pain medication.  (Am. Complaint at 6, ¶¶ 15-16; at 8, ¶ 21.)  In

addition, Plaintiff alleges that Defendants Alford, Brandt, Jorgenson and Gray refused to provide

medical treatment and/or pain medication and ignored Plaintiff's reports of pain, internal head pressure

and inability to focus his eyes.  Consequently, Plaintiff asserts that for two and a half days after being

beaten, he lay on a concrete cell floor with only a one-inch pad and was unable to get up for food at the

door slot.  (Am. Complaint at 6-7, 15C; ¶ 17.)  Moreover, Plaintiff alleges that Defendant Gray refused

multiple requests that Plaintiff be thoroughly examined and have x-rays taken after the assault.  (Am.

Complaint at 8, ¶ 21.)  Defendants deny the allegations.

      Plaintiff fails to specifically allege an objective, serious medical need and has not alleged facts

that demonstrate the Defendants acted with deliberate indifference to his needs.  The medical staff

concluded that Plaintiff's injuries were minor and there was no medical basis for him to go to the

hospital for x-rays.  (Alford Decl., ¶¶ 5-7; Gray Decl., ¶ 11; Davenport Decl., ¶ 4; Brandt Decl., ¶ 7;

Jorgenson Decl., ¶ 3; MR at 0000032-42.)  There is no evidence that Defendants failed to act in good

faith, or failed to treat Plaintiff's injuries within the applicable standard of care.  Regarding Plaintiff's

claims, Defendant Alford, a Registered Nurse, states:

> I responded to the call for assistance and examined and assessed the Plaintiff after the
> assault.  He was fully ambulatory.  As I recall, Plaintiff suffered bruises on his arms and
> an abrasion on the top of his right foot.  Plaintiff reported he was struck in the face and
> had pain and decreased range of motion in the right leg.  Although the Plaintiff reported
> swelling on the left side of his face, it was not noted upon a thorough examination
> immediately after the assault occurred.  I made the appropriate reports and cleaned and
> dressed the abrasion on the top of his right foot.  I did not take pictures.  I returned to

see the Plaintiff the following day, but he refused to be seen by me or even stand for
count, indicating he wanted to go to a local hospital and be seen by a "real doctor."

(Alford Decl., ¶ 5.)

Defendants deny that they ignored Plaintiff's reports of pain, internal head pressure and inability

to focus eyes, or that they deliberately allowed him to lay on a slim pad on a concrete floor, unable to

reach his food tray, for two and a half days after being beaten.  Defendant Brandt states that medical

staff make rounds and stop at every cell, seven days a week, to check on inmates.  (Brandt Decl., ¶ 7.)

If requested, medical staff will provide two tablets of aspirin or Tylenol, "on the spot."  Id.  Defendant

Dr. Gray opines that Plaintiff was appropriately and properly treated.  (Gray Decl., ¶ 11.)  In light of all

of the above, Plaintiff's claims fail to establish a constitutional violation, as he was provided appropriate

medical treatment commensurate with his injuries.

### 4.    CT Scan/Incorrect Dye Dosage Claim

Plaintiff alleges that on June 18, 2002, Defendant Maiden, without a medical license,

intentionally prescribed an incorrect dosage of oral contrast dye prior to a CT scan.  (Am. Complaint at

15b, ¶ 44.)  Plaintiff contends that Defendant Maiden intentionally inflicted pain, created the need for an

intravenous injection of the dye throughout Plaintiff's entire body, resulting in side effects of nausea,

heart fibrillation and hot flashes.  Id.

Plaintiff fails to allege facts by way of medical opinion or otherwise to establish that the injection

of an incorrect dosage of dye, if true, would create a serious need or that the symptoms alleged relate

to the injected dye.  It is not obvious to a layperson that an incorrect dye dosage, standing alone, would

produce an adverse, serious medical condition.

20

No allegations support an inference of deliberate indifference.  Defendant Maiden does not recall the incident, but denies that she, a medical secretary, prescribed the contrast dye.  (Maiden Decl., ¶ 7.)  In fact, Defendant Maiden states that she was not involved in the prescription of any medication or any substantive medical judgments or treatments of inmates.  Id.  Defendant Dr. Gray reviewed the medical records and opines that there is no indication that an incorrect dosage of dye was prescribed. (Gray Decl., ¶ 9.)  Thus, Plaintiff has not alleged facts to establish a serious medical need or deliberate indifference as required by the Eighth Amendment.  His claims should be dismissed.

### 5.    Cold Cell Claim

Plaintiff claims that for a two to three week period in the winter of 2002, he was placed in an end segregation cell that had exterior walls and was extremely cold during the night.  As a result, Plaintiff alleges that the refusal to correct the temperature or to move him constituted inhumane, cruel and unusual punishment, especially for a prisoner who had recently been beaten by a fellow inmate and was in pain.  (Am. Complaint at 7-8, ¶ 21.)

The Eighth Circuit has held that in order to establish that conditions of confinement violate the Eighth Amendment, an inmate must show that "(1) the alleged deprivation is sufficiently serious that it denies 'the minimal civilized measure of life's necessities,' and (2) the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety.'" Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (upholding summary judgment for defendants where inmate failed to produce evidence that he suffered any injury or adverse health consequences as a result of his confinement, or that the defendants knew of and disregarded an excessive risk to his health or safety.)  Here, Plaintiff has failed to allege facts to establish either element.  First, he has neither alleged nor established facts to show or

infer that his SHU cell was below minimal civilized standards, or that he suffered an injury or adverse health consequences as a result.  In addition, Defendant Brandt reports that there is no separate temperature gauge or thermostat for each cell, so the temperature in Plaintiff's cell was the same as in the other segregation cells.  (Brandt Decl., ¶ 7.)  While Plaintiff generally alleges that Defendants refused to move him to a different cell (Am. Complaint at 8, ¶ 20), he does not allege a specific request to be moved because of a specific serious need, or that a specific Defendant refused the request under circumstances suggesting deliberate indifference.  Accordingly, Defendant's Eighth Amendment claim fails and should be dismissed.

### 6.      Handcuffs/Excessive Force Claim

Plaintiff alleges that on or about May 10, 2002, he was held in segregation, and that in retaliation for Plaintiff's intent to file a lawsuit, Defendant Delano had Defendant Emmerich placed Plaintiff in handcuffs in a manner that caused his wrists to bleed.  (Am. Complaint at 9-10, ¶ 27.) Furthermore, Plaintiff contends that even after his wrists were bleeding, Defendant Emmerich refused to loosen the handcuffs and to provide or obtain medical treatment for Plaintiff's wrists.  Id.  Defendants Delano and Emmerich deny these allegations.  (Delano Decl., ¶ 5; Emmerich Decl., ¶¶ 4-5.)  In particular, Defendant Emmerich states that he handcuffed Defendant in accordance with his training, inserting his index finger between Plaintiff's skin and the cuffs, to ensure that the cuffs were not too tight. In response to Plaintiff's complaints about the tightness of the handcuffs, Defendant Emmerich rechecked the cuffs and found sufficient room for movement.  (Emmerich Decl., ¶ 4.)  Defendant Emmerich recalls that when Plaintiff outstretched his arms to be cuffed, that he scraped his lower thumb on the cell door, but he did not observe any bleeding.  Id., ¶ 5.  Finally, Defendant Emmerich denies

having refused to get medical attention for Plaintiff, noting that a Physician's Assistant examined Plaintiff's thumb scrape following Plaintiff's request.  Id.

In analyzing Eighth Amendment claims alleging excessive force, courts consider both the objective component – whether the wrongdoing was "harmful enough" to implicate the Eighth Amendment – and the subjective component – whether the officials acted with a sufficiently culpable state of mind.  See Riley v. Olk-Long, 282 F.3d 592, 595 (8th Cir. 2002) (female inmate satisfied both the objective and subjective components in proving a guard raped her.)

Under the subjective component, use of force by prison officials to maintain or regain control of prisoners may constitute cruel and unusual punishment if the force amounts to "the unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319-20 (1986); see, e.g., Estate of Davis v. Delo, 115 F.3d 1388, 1394-95 (8th Cir. 1997) (Eighth Amendment violated because officer struck inmate in head and face twenty to twenty-five times while four other officers restrained inmate's limbs, after inmate complied with order to lie face-down on floor without resisting officers, and evidence of serious injuries sustained by inmate); but see, e.g., Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000) (Eighth Amendment not violated because when inmate sprayed with pepper-based chemical spray resulting injury was de minimis, was not unnecessary and wanton infliction of pain, and inmate was offered treatment thereafter.)  The question of whether an official's use of force inflicted unnecessary and wanton pain turns on "the core judicial inquiry – . . . [into] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citations omitted); see, e.g., Munz v. Michael, 28 F.3d 795, 797-98 (8th Cir. 1994) (excessive force used when marshals kicked and

stomped inmate in retaliation for vandalizing interior of squad car); but see, e.g., Samuels v. Hawkins,

157 F.3d 557, 558 (8th Cir. 1998) (no violation when guard threw hot liquid on prisoner in restraints

after prisoner threw cup of urine at guard because guard did not act sadistically or maliciously, only

unprofessionally).

While Plaintiff alleges that his wrists bled due to handcuffing, he does not allege any permanent

or temporary injury to support the objective element of an excessive force claim.  On the contrary, the

evidence offered by Defendants directly contradicts Plaintiff's allegations.  As to the subjective

component of an excessive force claim, while Plaintiff alleges that Defendant Emmerich acted

"intentionally, deliberately, and knowingly," at Defendant Delano's behest, he does not allege facts that

support an inference that Defendant Emmerich knew of a serious risk of injury, drew that inference, or

that he acted maliciously for the purpose of causing Plaintiff harm.  Physician's Assistant Brandt

examined Plaintiff immediately following the incident, as noted in Defendant Emmerich's Declaration,

and observed a small, superficial red spot on Plaintiff's wrist.  (Brandt Decl., ¶ 6.)  She treated this by

applying a Band-aid with antibiotic ointment on it.  Id.  In light of the above facts, Plaintiff's excessive

force claim fails and should be dismissed.

### 7.    Solitary Confinement/Special Housing Unit Claim

Plaintiff alleges that on February 15, 2002, without authority, Defendant Maiden directed his

placement in the SHU and instructed Defendant Kirkland to place Plaintiff there.  (Am. Complaint at 4,

¶¶ 9-10.)  In addition, Plaintiff contends that Defendants Delano, Jorgenson, Brandt, Mundt,

Hershberger and Gray refused to end his placement in SHU.  (Am. Complaint at 7-8, 15c; ¶ 20.)

Plaintiff alleges that on or about March 26, 2002, Defendants Mundt, Hershberger, Wood and

Isaacson continued in their failure to respond to Plaintiff's unjustified placement in segregation.  (Am.

Complaint at 8, ¶ 22.)  In addition, he alleges that on June 19, 2002, he was taken to SHU after

Defendants Jorgenson and Maiden fabricated three incident reports.  (Am. Complaint at 12, ¶ 34.)

An inmate who makes a challenge in connection with prison disciplinary proceedings resulting in

segregated confinement or loss of privileges "must make a threshold showing that the deprivation of

which he complains imposed an 'atypical and significant hardship on [him] in relation to the ordinary

incidents of prison life.'"  Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000), quoting Sandin v. Conner,

515 U.S. 472, 484 (1995).  Administrative and disciplinary segregation are not atypical and significant

hardships.  See Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997).

Plaintiff's claims do not rise to the level of a constitutional violation.  He does not allege that his

placement posed an atypical or significant hardship and there is no legal entitlement, right, or liberty

interest that is protected under state or federal law regarding a prisoner's placement in the general

compound or another cell.

Moreover, Plaintiff's placement in SHU resulted from receipt of incident reports and were not

unjustified.  In inmate discipline cases, courts must ensure that the BOP follows the due process

procedures established in Wolff v. McDonnell, 418 U.S. 539 (1974).  Because they are not criminal

trials, prison disciplinary proceedings need not provide all of the procedural and substantive protections

afforded a defendant in a criminal proceeding.  Id. at 567-68.  Instead, an inmate possesses limited

procedural rights at any disciplinary action involving liberty interests, including the loss of good conduct

time.  Id. at 554.  Plaintiff fails to allege that the record lacks "some evidence" supporting the charges

that led to his confinement in SHU.  See Superintendent v. Hill, 472 U.S. 445, 455 (1985).  In

addition, as to Plaintiff's solitary confinement claims, he has not successfully challenged those decisions. See Edwards v. Balisok, 520 U.S. 641, 644-48 (1997); Portley-El v. Brill, 288 F.3d 1063, 1066-67 (8th Cir. 2002).   Accordingly, the Court recommends the entry of judgment for Defendants and dismissal of Plaintiff's claims based on these allegations.

### 8.      Placement of Violent Inmate in Plaintiff's Cell Claim

Plaintiff alleges that on February 16, 2002, Defendants Burns and Delano intentionally placed a violent prisoner, Murillo, in Plaintiff's segregation cell with the knowledge that Murillo would beat up any cell mate.  (Am. Complaint at 5, ¶¶ 11-14.)  According to Plaintiff, Murillo told Defendants Burns and Delano that he would "beat up any bunkie."  Id.  Plaintiff alleges that within minutes of Murillo's placement in his cell, Murillo beat him.  Id.  Defendants Burns and Delano specifically deny any malicious intent in placing the prisoner in Plaintiff's cell and further deny hearing Murillo make any statements regarding beating a cell mate.  (Burns Decl., ¶¶ 4-5; Delano Decl., ¶¶ 4-5.)  Plaintiff did not sustain serious injury and there is no allegation that his health and safety were seriously at risk by placing Murillo in his cell.  Defendant Alford, a Registered Nurse, responded to Plaintiff's call for assistance and noted that he was fully ambulatory with only minor injuries.  (Alford Decl., ¶¶ 4-5.)  Plaintiff's allegations do not establish a constitutional violation and this claim should be dismissed.

### 9.      Denial of Access to Courts/Attorney Claim

Plaintiff alleges that on or about February 18, 2002, Defendants Isaacson and Van Rooy refused his oral and written request for a private unmonitored telephone call with his attorney to discuss the beating and his inability to secure medical treatment.  (Am. Complaint at 15, ¶ 41.)  Plaintiff contends that Defendants Mann, Isaacson, Kirkland and Van Rooy refused to provide or return

administrative grievance forms and he was consequently denied access to the grievance process.  (Am.

Complaint at 15, ¶ 41.)

Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817

(1977).  A prisoner must allege and show that the defendants' actions hindered his efforts to pursue his

legal claim; i.e., he must prove an "actual injury" as a result of the alleged action.  Lewis v. Casey, 518

U.S. 343, 350-53 (1996); McMaster v. Pung, 984 F.2d 948, 952 (8th Cir. 1993).  Plaintiff fails to

allege an actual injury.

In addition to the legal authority indicating that Plaintiff has failed to allege a viable constitutional

violation based on his version of events, the facts presented by Defendants belie Plaintiff's claims.

Although he claims to have been denied access to the grievance process, the record demonstrates that

Plaintiff filed approximately fifty grievances at various levels while at FCI-Waseca.  (See, supra).

Defendants Isaacson and Van Rooy indicate that Plaintiff's request for a telephone call with his attorney

was denied because it was made verbally at an inappropriate time in the middle of a disciplinary

hearing.  (Isaacson Decl., ¶ 4; Van Rooy Decl., ¶ 5.)  Plaintiff does not claim that the alleged denial of a

private phone call with his attorney actually led to the denial of access to the remedy system, or to the

courts, or that he was harmed in any way.  His denial of access claims fail and should be dismissed.

### 10.  Harassment Claims

Plaintiff alleges that on July 3, 2002, Defendant Jorgenson maliciously stated to Plaintiff that if

he pursed a lawsuit against the medical department and Jorgenson, Jorgenson would make sure that

Plaintiff was confined to the SHU cell for his entire incarceration.  (Am. Complaint at 23.)  Moreover,

Plaintiff asserts that he was told that all other inmates were allowed to wear sunglasses, except him.

(Am. Complaint at 11, ¶ 30.)  Plaintiff also alleges generalized harassment by multiple Defendants, all of whom deny Plaintiff's allegations.

Plaintiff's allegations of verbal harassment do not rise to the level of a constitutional violation. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Williams v. Harness, 221 F.3d 1346 (8th Cir. 2000) (affirming judgment that Plaintiff, who was denied one meal during Defendant's shift and was subject to unspecific verbal harassment and three or four cell searches, did not otherwise establish a violation of his constitutional rights); cf., Burton v. Livingston, 791 F.2d 97, 99, 100-01 (8th Cir. 1986) (threatening words of prison guard, without more, do not invade a federally protected right, but such words do so when a guard "terrorized . . . [prisoner] with threats of death.") In addition, Plaintiff fails to state with specificity how he was harassed or what specific harm occurred as a result.  Plaintiff's claims of harassment should therefore be dismissed.

## 11.   Denial of Freedom of Religion Claim

Plaintiff alleges that on March 26, 2002, Defendant Mundt refused his request to attend a Jewish Passover service at the institution.  (Am. Complaint at 8, ¶ 22.)  Prison officials must afford prisoners opportunities to exercise their religious freedom.  See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972) (per curiam).  Prison regulations interfering with an inmate's free exercise of religion must be "reasonably related to legitimate penological interests."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-53 (1987).  A prisoner asserting a right of religious freedom must establish that his or her beliefs are sincere and religious in nature.  See e.g., Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988).  To state a cognizable claim of denial of the free exercise of religion, a prisoner must allege and prove that the action at issue unreasonably impinged on the inmate's exercise of his religion, and that such

impingement was not reasonably related to legitimate penological interests.  O'Lone, 482 U.S. at 349.

Here, Plaintiff alleges only that Defendant Mundt "maliciously refused" Plaintiff's request to attend a Passover service.  (Am. Complaint, ¶ 22.)  Defendant Mundt states that he has no recollection of Plaintiff's request. (Mundt Decl. at ¶ 4.)  Plaintiff did not file a grievance on this issue, but even assuming that Defendant Mundt did refuse Plaintiff's request, Plaintiff fails to allege the absence of a legitimate penological reason for such a refusal, the absence of a "logical connection" of the refusal to that legitimate penological interest, or the absence of any alternative means of exercising his religion. O'Lone, 482 U.S. at 349-52.  In fact, at the time Plaintiff alleges he was denied permission to attend services, he was in SHU.  Prison officials had legitimate reasons to place Plaintiff in SHU and any related restriction on Plaintiff's ability to attend one Passover service was neither unreasonable nor unconstitutional.  Plaintiff's conclusory allegation, without specific evidence, fails to establish this claim.

### 12.    False Reports/False Statements Claims

Plaintiff alleges that on January 17, 2002, Defendant Gray falsified medical records by reporting that an abdominal bulge was weight gain rather than a hernia.  (Am. Complaint at 3, ¶ 5.)  Plaintiff alleges that Defendants Gray and Jorgenson covered up his hernia condition and deprived him of hernia surgery and of his tinted prescription sunglasses.  (Am. Complaint at 9, ¶ 24.)  In addition, Plaintiff contends that Defendant Jorgenson falsified reports to staff and falsified medical records to cover up Defendant Maiden's actions in taking away Plaintiff's tinted glasses without any medical authorization and to cover up "the brutal beating."  Id.  Further, Plaintiff alleges that on June 19, 2002, in retaliation for the Warden ordering that Plaintiff be allowed to see an optometrist, Defendants Jorgenson and Maiden fabricated three additional Incident Reports against him resulting in Plaintiff being handcuffed

and taken to a segregation cell.  (Am. Complaint at 12, ¶ 34.)  Plaintiff alleges that Defendants Gray,

Jorgenson and Maiden made false statements in furtherance of their denial of his prescription

sunglasses. (Am. Complaint at 15a, ¶ 43.)

Defendants deny Plaintiff's allegations.  (<u>See</u> Decls. of Gray, Jorgenson and Maiden.)  Plaintiff's

allegations are unsupported by specific facts, nor does he allege any violation of a specific constitutional

right.  Assuming that his claims are based on the Fifth Amendment, a misconduct report, whether true or

false, even if it leads to disciplinary action, does not in and of itself trigger the protection of the Due Process

Clause.  <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995).  In addition, a prisoner's claim that he was falsely

accused of misconduct under prison regulations, without more, does not state a constitutional violation.

<u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986).  The three Incident Reports at issue were

addressed in accordance with BOP regulations.  The alleged retaliation was addressed *supra*.  Judgment

should be entered for Defendants on Plaintiff's false reports claims.

### D.      Dismissal for Failure to State a Claim Against Supervisory Personnel Defendants for Want of Personal Involvement

As discussed, Plaintiff repeatedly alleges a conspiracy among Defendants throughout his Amended

Complaint.  In a <u>Bivens</u> action, a federal official cannot be vicariously liable for the acts of his subordinates

under the doctrine of respondeat superior, unless he was personally involved in, or participated in the

unconstitutional acts.  <u>See</u> <u>Estate of Rosenberg by Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995).

Defendants are liable for their personal acts only. The general responsibility of a warden for supervising the

operation of a prison is not sufficient to establish personal liability.  <u>Id.</u> (citations omitted).  Unless a plaintiff

pleads an "affirmative link" between the supervisor's "personal participation, his exercise of control or

direction, or his failure to supervise," dismissal is appropriate.  McKay v. Hammock, 730 F.2d 1367, 1374

(10th Cir. 1984), accord, Buford v. Runyon, 160 F.3d 1199, 1203, n.7 (8th Cir. 1998).

While Plaintiff has made out bare allegations against certain supervisory Defendants apparently by

virtue of their respective supervisory positions, he fails to state with specificity how any of these Defendants

were personally involved or participated in the alleged unconstitutional acts.  He has not alleged that the

supervisory personnel failed to train, supervise, direct, or control the actions of any subordinate who caused

injury, so that the supervisor could be directly linked to the constitutional violation.

As to Defendant Outlaw, Plaintiff states that he was involved in a conspiracy to place him in SHU

and steal his "good time," and that he refused to provide him with sunglasses.  Defendant Outlaw denies

any personal involvement, and as to the alleged reports of misconduct or violations by Defendants to which

Defendant Outlaw allegedly failed to respond, he reviewed the informal and formal investigations and

concluded the staff acted within BOP standards and policies in all circumstances.  Id.

Regarding Defendant Mundt, former Warden and then Regional Manager for the NCRO, Plaintiff

alleges that he conspired to keep him in a segregation cell, steal his "good time," to deny medical

care/return of his prescription sunglasses, to inflict mental and physical abuse on him and to refuse to

correct the cold temperature in Plaintiff's cell.  Plaintiff does not state, however, with any specificity, how

Defendant Mundt was personally involved.  Defendant Mundt denies any personal involvement (Mundt

Decl., ¶ 4), but notes that if he did receive, for example, a request that Plaintiff attend religious services,

that he assigned it for investigation and a written response.  (Mundt Decl., ¶ 4.)

Plaintiff appears to name Defendant Hershberger by virtue of his supervisory role as the Regional

Director for the NCRO.  Although Plaintiff states that Defendant Hershberger conspired to inflict cruel and

unusual punishment on him in retaliation for his threat to file this suit, that Defendant Hershberger kept Plaintiff in a segregation cell, stole his "good time, "and failed to respond to Plaintiff's numerous allegations regarding medical care, eyeglasses and cell conditions, he does not state with any specificity, how Defendant Hershberger was personally involved.  In fact, Defendant Hershberger denies any such personal involvement, other than noting that he ensured that any correspondence he received was to be addressed appropriately.  (Hershberger Decl., ¶ 4.)

Plaintiff alleges that Defendant Wood, Associate Warden of Programs at FCI-Waseca, retaliated against him for filing administrative remedies, conspired with other Defendants to violate his civil rights and to place and keep him in the SHU.  Plaintiff does not state, however, with any specificity how Defendant Wood was personally involved.  Defendant Wood denies any specific personal involvement in Plaintiff's allegations, other than investigating and referring Plaintiff's complaints for a response.  (Wood Decl., ¶ 4.)

Plaintiff alleges that Defendant Mann, Associate Warden of Operations at FCI-Waseca, conspired to keep him in a segregation cell, steal his "good time," to inflict mental and physical abuse on him, to take no action after being informed of other Defendants' actions, and to fail to provide Plaintiff with successive administrative remedy forms.  Plaintiff does not state how Defendant Mann was personally involved, however.  Defendant Mann denies any personal involvement and personal knowledge of Plaintiff's allegations.  (Mann. Decl., ¶¶ 6-11.)

Plaintiff alleges that Defendant Isaacson, Unit Manager at FCI-Waseca, conspired with other Defendants and failed to respond to the denial of Plaintiff's prescription sunglasses and his placement in SHU.  Plaintiff does not state with specificity how Defendant Isaacson was personally involved.  Defendant Isaacson contends that Plaintiff's request to call his attorney was denied due to the inappropriate time it was

made and that the verbal request was not in accordance with BOP policy, which requires a written request. (Isaacson Decl., ¶ 4.)  Further, as set forth *supra*, there is no evidence that staff refused to provide Plaintiff with successive administrative remedy forms.

Accordingly, Plaintiff's claims against Defendants Outlaw, Mundt, Hershberger, Wood, Mann and Isaacson should be dismissed because they were named due to their supervisory positions and/or titles and Plaintiff has failed to show how these Defendants were personally involved in the alleged acts.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1.   Defendants' Motion to Dismiss or for Summary Judgment (Doc. No. 95) be **GRANTED.**

Dated:  May 10, 2005

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by May 25, 2005, after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.